IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTELSAT GLOBAL SALES AND
MARKETING, LTD., formerly known
as INTELSAT UK, LTD.,

    Plaintiff,

v.

LA GENERALE DES CARRIERS ET
DES MINES EXPLOITATION
d/b/a GECAMINES EXPLOITATION,

    Defendant.

Case Number 1:05CV01084
Honorable Richard J. Leon

**POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT GECAMINES' MOTION TO DISMISS, OR IN THE
ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

  Defendant La Générale des Carrières et des Mines, formerly La Generale des Carrières et des Mines Exploitation, d/b/a Gecamines (hereinafter "Gecamines") hereby moves this Court for an order pursuant to FED R. CIV. P. 12(b)(1) and 9 U.S.C. § 4 dismissing the Complaint filed by Intelsat Global Sales and Marketing, Ltd. ("Plaintiff") on the grounds that a binding arbitration agreement exists between the parties, or, in the alternative, staying the proceedings and compelling arbitration under 9 U.S.C. § 3. As additional alternative grounds for dismissal, Gecamines respectfully requests that the Court dismiss the Complaint under FED. R. CIV. PROC. 12(b)(3) on the grounds of forum non conveniens.

**STATEMENT OF RELEVANT FACTS**

  This matter is a breach of contract dispute between two foreign entities. Plaintiff, a provider of satellite telecommunications services, is a corporation existing under the laws of the United Kingdom. Compl. ¶ 1. Gecamines operates several mines in the

Democratic Republic of the Congo for which it holds mining concessions and is a corporation existing under the laws of the Congo, with its principal place of business in Lubumbashi, Congo. All of the shares of Gecamines are owned by the government of the Congo.

In its Complaint, Plaintiff alleges that Gecamines breached the terms of the parties' Novation Agreement and Service Contracts by failing to pay for long-term satellite communications services received from Plaintiff. Compl. at ¶¶ 6, 8, 11. Plaintiff asserts a breach of contract claim and a claim for quantum meruit/unjust enrichment, and seeks compensatory damages and permanent injunctive relief. Compl. at ¶¶ 18-27.

The relationship between Gecamines and Plaintiff is set forth in the underlying Service Contracts and the July 18, 2001 Novation Agreement. Attachment 2 to the Novation Agreement contains the "Service Terms and Conditions" that govern the new relationship between Plaintiff and Gecamines, after Intelsat became a private corporation. Although Plaintiff attached the purported Novation Agreement as an exhibit to the Complaint, it failed to attach the most important document at this stage of the proceeding – Attachment 2 to the Novation Agreement, containing the Service Terms and Conditions. This Attachment was served on Gecamines with the Complaint and Summons; however, it was inexplicably *excluded in the filing with the Court*.

The Service Terms and Conditions govern the contracts at issue and set forth the dispute resolution provision, to which the parties agreed, which includes a specific and lengthy <u>arbitration clause</u>:

> The Customer and the Company agree to endeavor to settle all disputes, controversies or claims arising under this Agreement, or in connection with the services pursuant to this Agreement, within sixty (60) days or such longer period as may be mutually agreed

2

> upon, from the date that either party given written notice of the existence of such dispute, controversy or claim to the other. If within such time the Customer and the Company have not been able to reach a settlement, either party may submit the dispute, controversy or claim for settlement by arbitration in accordance with the Rules of Arbitration of the International Chamber of Commerce in effect on the date of the Agreement before a panel of three arbitrators designated pursuant to those rules and the decision shall be binding on the Customer and the Company. The place of arbitration shall be Paris, France, unless otherwise mutually agreed by the Company and the Customer.

Attachment 2, Part I of the Novation Agreement, ¶ 17 (Ex. 1 herewith). The binding arbitration provision of Article 17 of the Service Terms and Conditions controls the resolution of this dispute, because it governs the parties' respective obligations under the Service Contracts at issue. Therefore, Gecamines respectfully requests that this Court dismiss the Complaint under 12(b)(1) and 9 U.S.C. § 4, or, in the alternative, stay the proceedings and compel arbitration pursuant to the provisions of Section 3 of the Federal Arbitration Act. 9 U.S.C. § 3. In the event that this Court does not compel arbitration, in the alternative, this action should be dismissed on the grounds of forum non conveniens.

## ARGUMENT

I.  **The Court Should Dismiss the Complaint and Compel Arbitration Under the Dispute Resolution Mechanism in the Contract at Issue.**

Both federal law and the law of the District of Columbia contain a strong policy favoring arbitration. This policy is particularly applicable where parties to an agreement have established a mechanism for submitting claims to arbitration. *See, e.g.*, *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 516-17 (1974); *In re Dist. No. 1-Pac. Coast Dist., Marine Eng'r's Beneficial*, 723 F.2d 70, 77 (D.C. Cir. 1983). The policy applies with "special force" when international commerce is involved. *Mitsubishi Motors Corp. v.*

3

*Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 631 (1985). The U.S. Supreme Court has made clear that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986); *Washington Mailers Union No. 29 v. Washington Post Co.,* 233 F.3d 587, 589 (D.C. Cir. 2000). As a matter of federal law, any doubts as to coverage should be resolved in favor of arbitration. *AT&T Techs., Inc.*, 475 U.S. at 649; *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 829 (D.C. Cir. 1987) ("[w]hereas doubts about the meaning of a contract are generally to be resolved by reference to the intention of the parties, the federal policy favoring arbitration counsels that doubts about the intended scope of an agreement to arbitrate be resolved in favor of the arbitral process").

### A. The Court Should Refer the Question of Arbitrability to the Arbitrator.

In this case, an arbitral panel, and not the Court, should decide the issue of arbitrability – whether arbitration governs the particular dispute -- because the agreement specifically incorporated arbitration rules mandating that the arbitrator decide the issue arbitrability. The law is clear that generally, the court decides the issue of arbitrability absent "clear and unmistakable" evidence from the arbitration agreement otherwise. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *AT&T Techs. Inc.*, 457 U.S. at 649. When, however, the "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and

4

unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution Co.,* 398 F.3d 205, 208 (2d Cir. 2005). The parties here explicitly incorporated "the Rules of Arbitration of the International Chamber of Commerce in effect on the date of the Agreement" in the dispute resolution clause of the Service Terms and Conditions. *See* Ex. 1 ¶ 17. The Rules of Arbitration of the International Chamber of Commerce ["ICC Rules"] provide for the International Court of Arbitration to resolve in the first instance any disputes about its own jurisdiction. *See* INTERNATIONAL CHAMBER OF COMMERCE, RULES OF ARBITRATION, Art. 6.2 (Oct. 2004) submitted herewith as Ex. 3. Specifically, Article 6.2 states "any decision as to the jurisdiction of the Arbitral Tribunal shall be taken by the Arbitral Tribunal itself." Ex. 3 at 12-13. Consequently, in this case, it is for the arbitrator and not the Court to decide the issue of arbitrability.

   Indeed, both appellate and district courts faced with the same issue have held that reference to the ICC Rules constitutes "clear and unmistakable" evidence that the parties agreed for the arbitrator – and not the court -- to decide the issue of arbitrability. *See, e.g., Shaw Group Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 124-25 (2d Cir. 2003) (referring question of arbitrability to arbitrator finding the reference to the ICC Rules clear and unmistakable evidence that parties agreed to submit questions of arbitrability to the arbitrator); *Apollo Computer, Inc. v. Berg,* 886 F.2d 469, 473-74 (1st Cir. 1989) (contracting to have the ICC Rules govern the arbitration constitutes clear and unmistakable evidence that the arbitrator should determine her own jurisdiction and whether a valid arbitration agreement exists between the parties); *Daiei, Inc. v. U.S. Shoe Corp.,* 755 F. Supp. 299, 303 (D. Haw. 1991) (finding incorporation of ICC Rules

evidences parties' agreement that arbitrator decide arbitrability, and dismissing complaint for failure to state a claim upon which relief can be granted under FED. R. CIV. PROC. 12(b)(6)); *cf Scherk,* 417 U.S. at 519 (reference to the ICC Rules in arbitration agreement "is, in effect, a specialized kind of forum-selection clause that posits not only the situs of the suit but also the procedure to be used in resolving the dispute").  Similarly, in this case, because the dispute resolution provision explicitly references the ICC Rules under which the arbitrator decides the question of its own jurisdiction, this Court must dismiss Plaintiff's Complaint under Rule 12(b)(1), and defer to the arbitrator on the question of arbitrability.

> **B.      Should the Court Consider the Issue of Arbitrability, It Should Nevertheless Find that Arbitration Governs the Dispute, Dismiss the Complaint, and Compel Arbitration.**

In the event that the Court reaches a contrary conclusion and decides arbitrability in this case, the Court should nevertheless dismiss the Complaint and compel arbitration under Section 4 of the Federal Arbitration Act ("FAA").  The FAA applies in federal court to suits which relate to contracts involving international commerce.  *Mitsubishi Motors Corp.,* 473 U.S. at 631.  Section 4 of the FAA provides that a party aggrieved by the failure of another to arbitrate under a written agreement may petition any U.S. court for an order directing that such arbitration proceed in the manner provided for in such agreement.  9 U.S.C. § 4.  In evaluating such a motion and determining arbitrability, a court makes a very limited two-part inquiry: (1) have the parties entered into a valid and enforceable arbitration agreement; and (2) does the arbitration agreement encompass the claims asserted in a complaint.  *Nur v. K.F.C. USA, Inc.*, 142 F. Supp. 2d 48, 50-51 (D.D.C. 2001); *Haynes v. Kuder*, 591 A.2d 1286, 1289 (D.C. 1991) (the court must

inquire "merely whether the arbitration clause is susceptible of an interpretation that covers the dispute"). In this determination, the court is not to rule on or consider the potential merits of the underlying claim nor decide issues pertaining to contract ambiguities. *AT&T Techs., Inc.*, 475 U.S. at 649; *Washington Mailers Union No. 29,* 233 F.3d at 590; *Finegold, Alexander + Assocs., Inc. v. Setty & Assocs. Ltd.,* 81 F.3d 206, 209 (D.C. Cir. 1996) (same).

District of Columbia courts use the summary judgment standard in evaluating whether arbitration governs the parties' dispute. *Brown v. Dorsey & Whitney, L.L.P.,* 267 F. Supp. 2d 61, 66-67 (D.D.C. 2003). Faced with a motion to compel arbitration pursuant to Section 4 of the FAA, the party resisting arbitration must do more than rely on conclusory allegations. *Id.*; *see also Greene v. Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999). The court should compel arbitration "if the evidence is merely colorable, or is not significantly probative." *Lok Tio, M.D. v. Washington Hosp. Ctr.,* Civ. A. No. 04-0701, 2004 WL 2663149 (D.D.C. Nov. 5, 2005). Therefore, District of Columbia courts have dismissed complaints outright, finding that disputes were governed by arbitration provisions in contracts and declining to opine on the merits of the dispute. *See, e.g., Lok Tio, M.D.,* 2004 WL 2663149, at *3 (dismissing complaint and compelling arbitration); *see also Brown v. Dorsey & Whitney, L.L.P.,* 267 F. Supp. 2d 61, 66-67 (D.D.C. 2003) (dismissing an employee's race discrimination suit because the dispute was subject to the parties' employment agreement that contained an arbitration clause).

In this case, it is clear that the parties agreed that arbitration would serve as the mechanism for resolving disputes relating to the contracts at issue. The arbitration provision of the Service Terms and Conditions is expressly stated and incorporates

extensive and specific rules and procedures governing the proceedings. According to the Service Terms and Conditions, the arbitration is to:

> (1) be governed by the Rules of Arbitration of the International Chamber of Commerce;
> (2) take place before a panel of three arbitrators designated pursuant to those rules;
> (3) be binding on the parties; and,
> (4) occur in Paris, France, unless otherwise mutually agreed to by the parties.

Ex. 1 ¶ 17. Moreover, the Service Terms and Conditions explicitly limit this Court's jurisdiction over this case to two narrow issues: interim relief before an arbitration commences and enforcement of the arbitral order. *Id.* Reading this clause in tandem with the expansive arbitration provisions clearly indicates the parties agreed to arbitrate all disputes, controversies, and claims between them, with regard to the underlying Service Contracts upon which Plaintiff bases its claim, and encompasses the claims raised in the Complaint. The arbitration clause in the contract is very broad. It applies to "all disputes, controversies or claims arising under this Agreement, or in connection with services provided pursuant to this Agreement." Ex. 1 ¶ 17. Plaintiff's claims "arise under" and are "in connection with services provided" in the underlying Service Contracts to which the Service Terms and Conditions apply. Plaintiff alleges that Gecamines breached the terms of the Novation Agreement and Service Contracts and owes money to Plaintiff because of the breach of such agreements and the unauthorized use of Plaintiff's satellite services and equipment. Compl. ¶¶ 12, 15. Therefore, given the presumption in favor of arbitrability and because any ambiguous language should be construed against the interest of the drafting party – in this case apparently, Plaintiff -- the Court should dismiss Plaintiff's Complaint and compel arbitration in this case.

### C. In The Alternative, The Court Should Stay the Case and Compel Arbitration.

In the event that the Court chooses not to dismiss this matter, Gecamines respectfully requests that the Court enter an order staying the case and compelling arbitration. 9 U.S.C. § 3. Section 3 of the FAA provides that the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. District of Columbia courts have held unequivocally that the FAA's stay of litigation provision is mandatory, and, if issues in a case are within reach of an arbitration agreement, the district court has no discretion to deny a stay. *See e.g., Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C. Cir. 1987) (the district court must stay the case pending arbitration if arbitration is indicated by the contract); *Hercules & Co. v. Beltway Carpet Serv. Inc.,* 592 A.2d 1069, 1072 (D.C. 1991) (if the dispute at issue is subject to arbitration, trial court must stay the case and order arbitration).

### II. The Court Should Dismiss the Case Under the Doctrine of Forum Non Conveniens Pursuant to Rule 12(b)(3).

Furthermore, this Court should dismiss the case under the doctrine of *forum non conveniens*. Courts have broad discretion to dismiss an action under the forum non conveniens doctrine so that it may be litigated in a more convenient forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). In making this determination, the Court should consider whether there is a more convenient forum that is adequate for the action, as well as private factors (such as the relative ease of access evidence, availability of witnesses, and the cost of obtaining witnesses) and public factors (such as local interests

9

and burden on the court). *Id.* at 508-09. "The weight of either the private interest factors or the public interest factors alone may be cause for dismissal." *BPA Int'l Inc. v. Kingdom of Sweden,* 281 F. Supp. 2d 73, 85 (D.D.C. 2003). Although a plaintiff's choice of forum is entitled to deference, a foreign plaintiff's selection of a United States forum is given less deference and is not the controlling factor. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 n.23 (1981); *BPA Int'l Inc.,* 281 F. Supp. 2d at 85.

An evaluation of the private and public factor supports the finding that the District of Columbia is not a convenient forum for the litigation. For example, a review of the private factors demonstrates that all of the evidence and witnesses are located outside of the United States. It will be very costly for these witnesses to travel from the Congo, Belgium, and the United Kingdom for trial. Correspondingly, the Court may not be able to compel the attendance of unwilling witnesses to travel to the District of Columbia.

The public factors weigh in favor of dismissing the action as well. All of the parties are foreign entities. None of the claims of the case arose in the District of Columbia. "Courts should encourage trial of controversies in the localities in which they arise." *Pain v. United Techs. Corp.,* 637 F.2d 775, 791 (D.C. Cir. 1980). The invoices were sent from Plaintiff from the United Kingdom to Gecamines in Belgium. *See, e.g.,* Ex. 2 herewith (invoice from Intelsat Global Sales & Marketing Ltd. in London to Gecamines Exploitation in Belgium). Payments were made to London. *Id.* Although the contract's choice of law provision references District of Columbia law, any of the potential alternative forums for this matter, Belgium, France, or the United Kingdom would be well equipped to interpret and apply District of Columbia law to the dispute if necessary to do so under the District's choice of law provisions. The parties appear to

10

have recognized this factor implicitly by acknowledging that international arbitrators would be capable of applying District of Columbia choice of law and by agreeing to jurisdiction in the courts of the District of Columbia solely for the limited purposes related to interim relief and enforcement of the arbitral award. Because this matter has no significant connection with the District of Columbia and because proper alternative forums are available, it is appropriate for this Court to dismiss this matter on the grounds of forum non conveniens.

## CONCLUSION

For the foregoing reasons, Gecamines respectfully requests that the Court dismiss Plaintiff's Complaint, or in the alternative, stay the action and compel arbitration pursuant to the Service Terms and Conditions governing the contracts at issue.

Date: September 6, 2005         Respectfully submitted,

                                /s/
Peter M. Boyle (D.C. Bar No. 441061)
Alexander M. Bullock (D.C. Bar No. 446168)
Svetlana S. Gans (D.C. Bar No. 478651)
KILPATRICK STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone:    (202) 508-5800
Facsimile:    (202) 508-5858

*Attorneys for Defendant La Générale des Carrières et des Mines, formerly La Generale des Carrières et des Mines Exploitation, d/b/a Gecamines*

11

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 6th day of September, 2005, pursuant to Federal Rule of Civil Procedure 5 and Local Civil Rules 5.3 and 5.4, she caused a copy of Defendant's Motion to Dismiss Plaintiff's Complaint and Statement of Points and Authorities in Support thereof to be filed electronically via the CM/ECF system and served on the following party via overnight UPS delivery:

David I. Bledsoe, Esquire
601 King Street
Alexandria, VA   22314
(703) 379-9424

        /s/
Svetlana S. Gans

12

WSHLIB01 214712.1