IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT GLOBAL SALES AND <br>     MARKETING, LTD., formerly known <br>     as INTELSAT UK, LTD., <br><br><br>     Plaintiff, <br><br> v. <br><br><br> LA GENERALE DES CARRIERS ET <br>     DES MINES EXPLOITATION, doing <br>     business as GECAMINES EXPLOITATION, <br><br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   CA No.1:05CV01084 <br> )    Hon. Richard J. Leon <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
COMPLAINT, OR IN THE ALTERNATIVE,
<u>TO STAY PROCEEDING AND COMPEL ARBITRATION</u>**

Plaintiff Intelsat Global Sales and Marketing, Ltd., by counsel, respectfully submits this Memorandum of Points and Authorities in Opposition to defendant La Generale Des Carriers et Des Mines Exploitation's Motion To Dismiss The Complaint, Or In The Alternative, To Stay Proceeding And Compel Arbitration.  This matter is properly before this Court, as the parties agreed that this Court should have jurisdiction over this dispute.  The Motion must be denied.

BACKGROUND OF THE CASE

Plaintiff Intelsat Global Sales and Marketing, Ltd., formerly known as Intelsat UK, Ltd. ("Intelsat Global"), is a corporation existing under the laws of the United Kingdom. Intelsat Global is the successor in interest to certain contractual rights of the International Telecommunications Satellite Organization ("INTELSAT"), an international organization established by the Agreement Relating to the International Telecommunications Satellite Organization, an international treaty dated August 20, 1971.

Defendant La Generale Des Carriers et Des Mines Exploitation, doing business as Gecamines Exploitation, ("Gecamines") is a corporation existing under the laws of the Democratic Republic of the Congo, with its principal place of business in Brussels, Belgium. Gecamines is an instrumentality of the government of the Democratic Republic of the Congo as defined in 28 U.S.C. §1603.

In approximately October 2000, INTELSAT and Gecamines entered into a number of agreements ("the Service Contracts"). Pursuant to those Service Contracts, INTELSAT agreed to provide to Gecamines certain long-term satellite telecommunications services, and Gecamines agreed to pay for such services.

On July 18, 2001, INTELSAT, Intelsat Global, and Gecamines entered into a Novation Agreement ("Novation Agreement"). [1] Under the terms of the Novation Agreement, the parties agreed to transfer all of INTELSAT's rights and duties under the Service Contracts, including the right to all payments, from INTELSAT to Intelsat

---

[1] A copy of the Novation Agreement is attached to the Complaint as Exhibit 1.

Global.[2]  Intelsat Global agreed to assume all obligations of INTELSAT to provide Gecamines with telecommunications services under the Service Contracts, and Gecamines agreed to pay to Intelsat Global the charges and fees for such services as provided in the Service Contracts and the Novation Agreement, and agreed to pay all invoices issued by Intelsat Global for such services.

Pursuant to the Novation Agreement and the Service Contracts, Plaintiff provided telecommunications services to Gecamines and performed all its obligations under the Novation Agreement and the Service Contracts.  Beginning in approximately April 2003, Gecamines stopped paying Intelsat Global for its services, but continued to use such services.

On September 16, 2004, due to Gecamines's failure to pay for plaintiff's services for nearly eighteen months, plaintiff terminated the Service Contracts between plaintiff and Gecamines, as provided for in the Novation Agreement and Service Contracts.  Under the terms of the Novation Agreement and Service Contracts, all amounts due from Gecamines to plaintiff under the remaining term of the Service Contracts became immediately due and payable at that time.

Pursuant to the Novation Agreement and the Service Contracts, as of April 5, 2005, plaintiff has issued invoices totaling $4,355,025.15 to Gecamines, which invoices Gecamines has failed to pay. [3]  Gecamines has repeatedly acknowledged the validity of the service invoices, which Gecamines received over a period dating from April 2003

---

[2]  At the time the Novation Agreement was executed, Intelsat Global was known as Intelsat UK, Ltd.
[3]  A summary of the unpaid invoices is attached to the Complaint as Exhibit 2.

through October 2004; Gecamines has never disputed any service invoice issued by plaintiff.[4]  Under the terms of the Service Contracts, such invoices are final.

In spite of the termination of the contract, Gecamines continued to pirate Intelsat Global's satellite and communication services without paying for them.  Such actions constitute theft of services and trespass to Intelsat Global's telecommunication equipment.

Pursuant to the Novation Agreement and the Service Contracts, as of January 25, 2005, Gecamines owes plaintiff the sum of $4,355,025.15, together with interest and the costs of collection.  Despite repeated demand for payment, Gecamines has failed to make payments as due.

## ARGUMENT

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1330, as defendant is an instrumentality of the government of the Democratic Republic of the Congo as defined in the Foreign Sovereign Immunities Act, 28 U.S.C. §1601 et seq. ("FSIA").  Gecamines has waived its immunity from the jurisdiction of United States courts as defined in 28 U.S.C. §1605(a)(1) by agreeing in the Novation Agreement to submit to the exclusive jurisdiction of the courts of the District of Columbia.  Gecamines is also is engaged in commercial activity that causes a direct effect in the United States as defined in 28 U.S.C. §1605(a)(2).  Complaint, Exhibit 1, ¶ 9.  The Supreme Court has

---

[4] Gecamines has disputed in writing a single invoice. That single disputed invoice is the termination invoice dated September 27, 2004, requiring Gecamines to pay for the remaining balance of its Service Contracts as required by the Agreement.

expressly held that foreign entities such as plaintiff may bring suit against alien defendants under the FSIA.  <u>Verblinden v. Central Bank of Nigeria,</u> 461 U.S. 480 (1983).

Jurisdiction and venue in this Court is proper, as Gecamines has irrevocably consented to the jurisdiction of this court.  Complaint, Exhibit 1, ¶ 9.  The Novation Agreement that is the subject of the breach of contract dispute provides in paragraph 9:

> This Agreement and the relationship between the Contracting Parties shall be governed by and construed in accordance with the laws of the District of Columbia. U.S.A. *and the Contracting Parties hereby submit to the <u>exclusive jurisdiction</u> of the District of Columbia courts or any United States Federal Court sitting in the District of Columbia.*

Emphasis supplied.

The Novation Agreement also incorporates by reference Intelsat's standard Terms and Conditions for Novated Contracts.  Gecamines has attached part of those Terms and Conditions to its Motion.[5]  Gecamines's entire argument is premised on paragraph 17 of those Terms and Conditions, which provide for the possibility that a party *may*, but is not required to, refer a dispute to arbitration:

> The Customer and the Company agree to endeavor to settle all disputes, controversies or claims arising under the Agreement, or in connection with services provided pursuant to this Agreement, within sixty (60) days, or such longer period as may be mutually agreed upon, from the date that either party has given written notice of the existence of such dispute, controversy, or claim to the other.  If within such time the Customer and the Company have not been able to reach settlement, either party <u>may</u> submit the dispute, controversy or claim for settlement by arbitration in accordance with the Rules of Arbitration of the International Chamber of Commerce in effect on the date of the Agreement before a panel of three arbitrators designated pursuant to those rules and the decision shall be binding on the Customer and the Company. . . *Any party to this Agreement may seek from a court of the District of Columbia or a United States*

---

[5]   Contrary to counsel's representation, the Terms and Conditions, which are nearly two hundred pages, were not attached to either the filed Complaint or the Complaint served upon Gecamines.

> *Federal Court sitting in the District of Columbia any interim relief,
> including injunctive relief or confirmation of any arbitral award rendered
> in whole or in part….*[6]

Emphasis supplied.

The Terms and Conditions further provide in Paragraph 22:

> *All rights and remedies conferred hereunder or otherwise shall be
> cumulative and may be exercised individually or concurrently.*

Gecamines contends that Section 17, which provides that a party "<u>may</u>" refer a dispute to arbitration is actually mandatory. Gecamines's arguments defy common sense. The main body of the Novation Agreement provides that the parties submit to the "exclusive" jurisdiction of the courts of the District of Columbia. While the Terms and Conditions, an attachment to the Novation Agreement, provide a party the option to choose arbitration, it is simply overreaching and incorrect for Gecamines to claim that arbitration is mandatory, not optional. Gecamines hopes that the Court reads "may" to mean "shall" and chooses not to bring to the Court's attention Paragraph 22 of the Terms and Conditions, which specifically provides that all rights and remedies are cumulative and may be exercised individually or concurrently. Gecamines's meritless Motion must be denied.

    I.    <u>Gecamines agreed to submit to the exclusive jurisdiction of this Court.</u>

Determination of whether an issue is arbitrable is for the court to decide, not an arbitrator. <u>Howsam v. Dean Witter Reynolds</u>, 537 U.S. 79 (2002); <u>Booker v. Robert Half</u>

---

[6] Gecamines inexplicably omits any mention of the italicized portion of Paragraph 17 in its Motion.

Int'l Inc. 315 F.Supp.2d 94 (D.D.C. 2004), aff'd, 413 F.3d 77 (D.C. Cir. 2005)  The Novation Agreement contains a forum selection clause selecting this court as the proper forum for resolution of disputes.

The Supreme Court has repeatedly held that forum selection clauses must be upheld in international disputes.  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972).  In order to overcome a forum selection clause, the party seeking to avoid the clause's effect must show that enforcement would be unreasonable and unjust, or that the clause is invalid for fraud or overreaching.  Id. at 15.  Gecamines has made no such showing here.  Accordingly, the parties' choice of this court as the "exclusive" jurisdiction for resolution of issues relating to the Agreement must be upheld.  See also Marra v. Papandreou, 216 F.3d 1119 (D.C.Cir. 2000); Overseas Partners, Inc. v. PROGEN Musasirlik ve Yoneti Hizmetleri. Ltd., 15 F.Supp.2d 47 (D.D.C. 1998).

    II.    Arbitration under paragraph 17 is optional, not mandatory.

It is a fundamental matter of law that a party cannot be forced to arbitrate when it has not agreed to do so.  AT&T Technologies, Inc. v. Communication Workers of America, 475 US 643 (1986).  Nor can a party be forced to arbitrate against its will if an arbitration clause permits, but does not require, arbitration.  Summit Packaging Systems, Inc. v. Kenyon & Kenyon, 273 F.3d 9 (1st Cir. 2001).

Federal law does not require parties to arbitrate where they have not agreed to do so, but only requires that courts enforce the arbitration clause according to its terms.  Volt Information Science, Inc. v. Board of Trustees of Leland Stanford Jr. University, 489 U.S. 468 (1989).  Arbitration is a matter of consent, not coercion, and parties are free to

structure their agreements as they see fit.  A court may not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.  Id. at 294.  The judicial task is not to foist arbitration on those who have not agreed to it, but to implement the *parties'* preferences between judicial and arbitral forums, not to displace that choice with the court's.  Stone .v Doerge, 328 F.3d 343, 345-6 (7th Cir. 2003).

Virtually every single case cited by Gecamines in support of its argument that arbitration is mandatory involves a clause that required arbitration as the exclusive means of resolving disputes.  Two of Gecamines's cases, Washington Mailers Union No. 29 v. Washington Post Co., 233 F.3d 587 (D.C. Cir. 2000) and In re Dist.1-Pac. Coast Dist., Marine Eng'rs Beneficial, 723 F.2d 70 (D.C.Cir. 1983) do not specify the language of the arbitration clause at issue.  Virtually every other case that Gecamines cites in support of its view contains a clause that provides that the parties "shall" arbitrate.  See. e.g., Pearce v. E.F. Hutton, 828 F.2d 826, 828 (D.C.Cir. 1987)("any controversy ..shall be settled by arbitration…"); Finegold, Alexander & Associates, Inc. v. Setty & Associates, Ltd., 81 F.3d 206, 207 (contract provided certain dispute "had to be resolved through arbitration"); Nur v. KFC USA, Inc., 142 F.Supp.2d 48, 5 (D.D.C. 2001) (parties agree to use binding arbitration for any claims);  AT& T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 644-5 (1986) (disputes "must" be referred to arbitration); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc,  616 U.S. 617 ( 1985) ("all disputes…shall be finally settled by arbitration…"); First Options of Chicago, Inc. v. Kaplan, 19 F.3d 1503,1507, n. 5, (7th Cir. 1994), aff'd, 514 U.S. 938 (1995) ("any controversy…shall be submitted to arbitration…"); Shaw Group Inc. v. Triplefine Int'l

8

Corp., 322 F.3d 115, 120 (2d Cir. 2003) ("all disputes …shall be referred to arbitration…"); Apollo Computer, Inc. v. Berg, 886 F.2d 469, 474 (1st Cir. 1989) ("all disputes…shall be finally settled by arbitration…"); Daiei, Inc. v. US Shoe Corp, 755 F.Supp. 299, 301 (D. Hawaii 1991) ("all disputes or differences…shall be settled by arbitration…"); Haynes v. Kuder, 591 A.2d 1288 (D.C. 1991)("any claim…shall be resolved exclusively through arbitration…"); Hercules & Co. v. Beltway Carpet Serv. Inc., 592 A.2d 1069, 1072, n. 2 ("All …disputes shall only be resolved by arbitration…")..

In contrast to the cases cited by Gecamines, the contract before the Court provides merely that the parties "may" arbitrate; further provides that the parties consent to this Court's "exclusive" jurisdiction; and further provides that all such remedies are cumulative. It is well established that optional arbitration clause are just that – optional. In Summit, supra, the clause at issue provided that the parties could either litigate in New York courts or arbitrate in New York. The Second Circuit ruled that the plain language of the clause made arbitration permissive, not mandatory. 273 F.3d at 13. See also BCS Insurance Co. v. Wellmark, Inc., 410 F.3d 349 (7th Cir. 349) (arbitration optional).

Even the optional arbitration clause contained in the Terms and Conditions expressly provides for litigation. Gecamines omits from its brief any mention of the end of the "mandatory" arbitration clause:

> *Any party to this Agreement may seek from a court of the District of Columbia or a United States Federal Court sitting in the District of Columbia any interim relief, including injunctive relief or confirmation of any arbitral award rendered in whole or in part…*

Courts have held that such language renders an arbitration clause optional, not mandatory. In Independent Oil Workers v. Mobil Oil Corp., 441 F.2d 651 (3d Cir. 1971),

9

an arbitration clause required all disputes "shall" be submitted to arbitration. However, the clause also provided that

> Nothing in this Agreement shall prevent either [party]…from applying to a court of competent jurisdiction for the relief to which such party may be entitled in accordance with the law applicable….

The Third Circuit stated:

> Taking the words of paragraph 3 at their plain and ordinary meaning, we find that the effect is to make arbitration optional…The qualification that 'nothing in this agreement shall prevent' application to a court of competent jurisdiction takes away the mandatory aspect of the contractual grievance procedure.

Likewise, in this case, the arbitration clause itself specifically provides that arbitration is optional. In addition to paragraph 9 of the Novation Agreement requiring Gecamines to submit to the exclusive jurisdiction of this Court, *the arbitration clause itself provides that a party may litigate in this Court instead.* Gecamines's argument that arbitration is mandatory can only be maintained if one chooses to ignore the plain language of the contract.

Gecamines ignores this Court's ruling in Bombardier Corp. v. National R.R. Passenger Corp., 298 F.Supp.2d 1 (D.D.C. 2002), appeal dismissed, 333 F.3d 250 (D.C.Cir. 2003). In Bombardier, the defendant sought to dismiss the case, arguing that the plaintiff was required to use a contractual alternative dispute resolution (ADR) specified in the contract between the parties. The contract did not state that a party "shall" use the ADR, only that a party "may" use the ADR. Id. at 3. This Court properly held that such a clause makes the ADR optional, not mandatory:

> Not only does the Contract fail to clearly and unambiguously state that dispute resolution is a condition precedent to litigation, it contains two provisions that arguably make the parties' participation in dispute resolutions optional, not mandatory. In Article 29.3, the Contract states

10

>    that. . . the Contractor "*may* pursue the Claim in accordance with . . . .Article 32," the dispute resolution procedures . . By using the words "may," and "or," the Contract suggest that the Contractor may permissibly choose *not* to engage in the dispute resolution procedures of Article 32. . . . It is difficult to reconcile language that seems to make dispute resolution not a requirement but a choice with Amtrak's contention that participation in a DRB must always precede litigation without exception.

Id. at 5 (emphasis in original.)

      Likewise, the contract at issue here provides that a party "may" refer a matter to arbitration.  The only possible reading of such a clause is that arbitration is optional.  Indeed, the present case militates even more strongly against a finding that arbitration is mandatory.  In <u>Bombardier</u>, there was no specific clause authorizing suit in this Court; the contract at issue here expressly provides that the parties submit to the exclusive jurisdiction of this Court.  The contract simply cannot possibly be construed to require mandatory arbitration.

      Furthermore, the Terms and Conditions specifically provide in paragraph 22:

> *All rights and remedies conferred hereunder or otherwise shall be cumulative and may be exercised individually or concurrently.*

Thus, the right of a party to arbitrate in paragraph 17 of the Terms and Conditions, and the right of a party to litigate under that same paragraph and under paragraph 9 of the Novation Agreement are cumulative.  Indeed, given that paragraph 22 makes all remedies cumulative, even if Gecamines were permitted to substitute "shall" for "may" in the arbitration clause, arbitration still would not be mandatory: either party could choose to litigate under paragraph 9 of the Novation Agreement or choose to arbitrate under paragraph 17 of the Terms and Conditions.  Gecamines's argument cannot bear the lightest of scrutiny.  The only possible conclusion is that both arbitration and litigation are viable options for a party to the Agreement.

11

In this Agreement, the parties consented in the unmistakable terms of paragraph 9 of the Novation Agreement, the main body of this contract, that the parties could litigate their disputes in this Court. Paragraph 17 of the Terms and Conditions, an attachment to the Novation Agreement, also provides for the parties <u>may</u>, but are not required to, arbitrate in the ICC. Plaintiff was and is perfectly within its contractual rights to bring this lawsuit in this Court, and Gecamines expressly agreed to the <u>exclusive</u> jurisdiction of this Court. Gecamines's argument that the Court should ignore the unmistakable language of the Agreement and rule that arbitration is mandatory, rather than optional, is simply frivolous and unsupported by any authority.

Arbitration is a matter of consent, not coercion, and parties are free to structure their agreements as they see fit. <u>Volt</u>, 489 U.S. at 294. A court may not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. <u>Id</u>. Yet that is precisely what Gecamines asks this Court to do: to foist mandatory arbitration on those who have not agreed to it. The Court should respect the parties' preferences between judicial and arbitral forums, as plainly delineated in the Agreement, and not displace that choice with another. <u>Cf.</u> <u>Stone .v Doerge</u>, 328 F.3d 343, 345-6 (7th Cir. 2003); <u>Satcom Int'l Group PLC v. Orbcomm Int'l Partners</u>, 49 F.Supp. 2d 331 (S.D.N.Y. 1999), <u>aff'd</u>, 205 F.3d 1324 (2d Cir. 1999) (injunction staying arbitration issued where arbitration was optional, not mandatory, and parties were properly before the court).

      III.    <u>The Federal Arbitration Act does not apply to this matter.</u>

In support of its argument that arbitration is mandatory in this case, Gecamines cites repeatedly the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 et seq., and cases applying it. Unfortunately, the Federal Arbitration Act is not the applicable statute to this case, and thus Gecamines's cases mandating arbitration under the policies of the FAA are inapposite.

Arbitration in cases involving international disputes are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. §201 <u>et seq</u>. <u>Jain v. de Mere</u>, 51 F.3d 686 (7th Cir. 1995). 9 U.S.C. § 202 provides that all arbitral agreements are to be construed under the Convention, unless they are between two United States citizens, involve U.S.-based property, or have no reasonable relationship with one or more foreign states. Id. This Agreement between a United Kingdom company and a Congolese company clearly falls under the Convention, rather than the FAA.

While there is some overlap between the Convention and the FAA, the Convention controls in the case of conflicts. Unlike the FAA, the Convention does not provide for mandatory court-ordered arbitration. 9 U.S.C. §206 provides that

> A court having jurisdiction under this chapter <u>may</u> direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.

Thus, under the Convention, there is no statute requiring arbitration to be held even if an arbitration agreement is in force. Thus, Gecamines's citation of FAA cases requiring mandatory arbitration are simply inapposite.

13

>    IV.   <u>Gecamines has waived its right to arbitrate the service invoices in this case.</u>

Even if, as Gecamines wistfully desires, arbitration were mandatory in this case, Gecamines still would not be able to compel arbitration. Gecamines has waived any right to dispute any of the quarterly service invoices in this matter, and therefore has waived the right to arbitrate that dispute.

Any dispute by Gecamines of the invoices in this case is governed by paragraph 5.3(b) of the Terms and Conditions. See Exhibit 1 to Gecamines's Motion. That paragraph provides:

> The Customer shall notify the Company as soon as possible *but no later than 45 days after the invoice date* in the event of any dispute regarding the charges payable by the Customer to the Company.

Emphasis supplied. As noted in the Affidavit of John Strand, attached hereto as Exhibit A, the quarterly service invoices that are at issue here were issued between April 2003 and October 2004. Each is thus at least eleven months old; several are more than two years old. Gecamines has never disputed a single one of these quarterly invoices. Under the provisions of the Agreement, Gecamines has waived its right to dispute any of these invoices. Accordingly, any right to arbitrate this "dispute" has also been waived.

It is well established that the right to arbitrate a dispute can be waived. <u>Woodland Ltd. Partnership v. Wulff</u>, 868 A.2d 860 (2005). In order to preserve the right to dispute these invoices, Gecamines had to communicate their disagreement with any specific invoice within 45 days after the invoice was issued. Strand Affidavit, ¶ 3. By failing to invoke the invoice dispute mechanism agreed to by the parties to the Agreement, Gecamines waived its right to dispute such invoices. Indeed, Gecamines has repeatedly acknowledged the validity of the invoices in correspondence. Accordingly, Gecamines

cannot now attempt to refer these undisputed invoices to arbitration when it has failed to dispute them, some of which are over two years old.

Gecamines had an opportunity to dispute the invoices under the Agreement and failed to do so. Those invoices became incontestable by Gecamine's failure to raise any dispute. Even after the time to dispute them had lapsed, Gecamines did nothing in the next two years to challenge in any way plaintiff's charges, and has waived the right to do so. Accordingly, Gecamines has waived its right to arbitrate these undisputable charges.

V.     The issue of Gecamines's theft of services from Intelsat is not arbitrable.

What Gecamines blithely omits from its motion is the fact that Plaintiff seeks damages and injunctive relief in this matter to remedy Gecamines's theft of services from Intelsat Global. As such matters are distinctly not arbitrable, Gecamines's Motion must fail.

As noted above, arbitration is a matter of contractual consent. No party can be forced to arbitrate any matter when it has not agreed to do so. EEOC v. Waffle House, 534 U.S. 279 (2002). In September 2004, faced with 18 months of nonpayment by Gecamines, Intelsat Global terminated its services under Novation Agreement and the Service Contracts. After termination, from September 2004 through at least June 2005, Gecamines simply stole Intelsat Global's telecommunication services without any compensation. This piracy of satellite service does not "arise under" the Agreement; Gecamines's rights under the Agreement to receive services had been terminated due to Gecamines's refusal to pay for such services.

15

Count II of the Complaint seeks compensation in quantum meruit and unjust enrichment for Gecamines's unauthorized theft of Intelsat Global's services. Intelsat Global's legal right to recover for Gecamines's piracy of its services arises, not under any contract, but as a matter of common law. See Bloomgarden v. Coyer, 479 F.2d 201 (D.C.Cir. 1973) (unjust enrichment is an equitable remedy akin to restitution); Perles v. Kagy, 362 F.Supp. 2d 2005 (D.D.C. 2005) (unjust enrichment and quantum meruit are non-contractual remedies).

No contractual rights are in dispute, but rather what is the proper compensation under common law for Gecamines's theft of services. Cf. DSMC, Inc. v. Convera Corp., 273 F.Supp.2d 14, 29-30 (D.D.C. 2002), appeal dismissed, 349 F.3d 679 (D.C. Cir. 2003), (contractual arbitration clause would not preclude litigation of liability that arises under statutory or common law). The presence of an optional arbitration clause in the Terms and Conditions is no bar to plaintiff's right to seek redress for Gecamines' extra-contractual theft of services. Accordingly, there is no agreement on Intelsat Global's part for even permissive arbitration over Gecamines's theft of services.

Furthermore, Plaintiff in this case seeks injunctive relief to prohibit any further piracy by Gecamines. Complaint, Count III. As the Novation Agreement clearly provides, injunction is specified as one of the grounds upon which the parties may seek interim relief. Gecamine's motion does not address this issue in any manner, and the reason for such omission is obvious. Gecamine's motion must be denied.

      VI.    <u>Gecamines has consented to jurisdiction in this Court, and is barred from raising a forum non conveniens argument.</u>

Gecamines baldly asks this Court to dismiss this case on <u>forum non conveniens</u> grounds <u>when it consented to the exclusive jurisdiction of this Court.</u>  This argument is patently frivolous.  Further aggravating the frivolity of the motion, Gecamines cites numerous cases in support of its motion to transfer, *not a single one of which involves a forum selection clause.*

The Supreme Court has held that forum selection clauses are to be enforced absent a showing that enforcement would be unreasonable and unjust, or that the clause is invalid for fraud or overreaching.  <u>M/S Bremen v. Zapata Off-Shore Co</u>., 407 U.S. 1 (1972).  Increased cost or convenience to a party are insufficient reasons to invalidate a forum selection clause.  <u>Mitsui & Co. (USA) Inc. v. Mira M/V</u>, 111 F.3d 33 (5th Cir. 1997).  A party that agrees to a mandatory forum selection clause waives objections to venue on the basis of cost or inconvenience to itself.  <u>Northwestern National Ins. Co. v. Donovan</u>, 916 F.2d 375 (7th Cir. 1990).  <u>See</u> <u>also</u> <u>Overseas Partners, Inc. v. PROGEN Musasirlik ve Yoneti Hizmetleri. Ltd</u>., 15 F.Supp.2d 47 (D.D.C. 1998) (any obstacles to enforcement of forum selection clause were foreseeable by the parties at the time they agreed to the clause).

Whatever inconvenience or cost Gecamines claims it will suffer were foreseeable at the time it entered into the contract, and cannot now be raised as the basis for a <u>forum non conveniens</u> argument.  <u>Overseas Partners, Inc.</u>, <u>supra.</u>  Gecamines has not, and cannot, show that the forum selection clause consenting to this Court's exclusive jurisdiction is the product of fraud or overreaching.  Moreover, Gecamines fails to

17

suggest any alternative forum. As noted above, arbitration in the ICC cannot be compelled and thus does not qualify as an alternate forum. District of Columbia law governs this case and the parties have agreed, in two separate sections of the Agreement, to litigate in this Court. Accordingly, the argument must fail, and the motion to transfer for forum non conveniens denied.

For the foregoing reasons, Plaintiff prays this Court deny Gecamines's Motion To Dismiss The Complaint, Or In The Alternative, To Stay Proceeding And Compel Arbitration, and for such other relief as to the Court seems proper.

## REQUEST FOR HEARING

Pursuant to Local Rule 7(f), Plaintiff respectfully requests oral hearing on this Motion.

                                                  INTELSAT GLOBAL SALES AND
                                                  MARKETING, LTD.
                                                  By Counsel

     /S/
David I. Bledsoe
Bar Number 422596
601 King Street
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)

## CERTIFICATE OF SERVICE

  I certify that on September 18th, 2005, I filed electronically a true copy of the foregoing Opposition and Memorandum of Points and Authorities in PDF format with the CM/ECF system and served the same by first class mail on:

Peter M. Boyle, Esq.
Kilpatrick Stockton LLP
607 14th Street NW
Suite 900
Washington DC 20005

                _____/s/_____
                David I. Bledsoe