IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTELSAT GLOBAL SALES AND
MARKETING, LTD., formerly known
as INTELSAT UK, LTD.,

                 Plaintiff,

v.                                                                              Case Number 1:05CV01084
                                                                                Honorable Richard J. Leon

LA GENERALE DES CARRIERS ET
DES MINES EXPLOITATION
d/b/a GECAMINES EXPLOITATION,

                 Defendant.


**DEFENDANT GECAMINES' REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS, OR IN THE
<u>ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION</u>**

## TABLE OF CONTENTS

STATEMENT OF RELEVANT FACTS ........................................................................2

ARGUMENT .........................................................................................................2

I.    The Question of Arbitrability Is One for the Arbitrator, and Not the Court. ....................................................................................................2

II.   The Court Must Compel Arbitration Under the Dispute Resolution Mechanism in the Contract at Issue. ........................................................3

      A.    Because the Arbitration Agreement Requires The Parties to Arbitrate the Present Claims, Plaintiff Cannot Maintain This Action in Federal District Court. ..............................................3

           1.    Courts Have Construed Similar Arbitration Provisions As Mandatory and Not Permissive. ..........................................4

           2.    The Cases Upon Which Plaintiff Relies To Support Its Argument Regarding The Permissive Nature of Arbitration Are Inapposite. ...................................................................6

      B.    The Parties Only Agreed to Submit to The Jurisdiction of This Court For Very Limited Purposes, None of Which Applies Here. ..............9

      C.    Gecamines Has Not Waived Its Rights to Arbitration. ..............................12

      D.    Plaintiff's Claims Fall Squarely Within the Scope of the Arbitration Provision. ..................................................................14

      E.    The FAA and Convention Both Require the Court to Compel Arbitration under the Present Facts. ...............................................15

III.  Gecamines Has Not Agreed to Submit to the Jurisdiction of This Court Under These Circumstances And Should Not Be Forced To Due So Given The Inconvenience and Hardships That Would Result. ...............................19

CONCLUSION ....................................................................................................20

## TABLE OF AUTHORITIES

### Cases

*Am. Italian Pasta Co. v. Austin Co.*,
914 F.3d 1103 (8th Cir. 1990) ......................................................... 5

*Atkins v. Louisville & Nashville R.R.*,
819 F.2d 644 (6th Cir. 1987) ........................................................... 4

*Austin v. Owens-Brockway Glass Container, Inc.*
78 F.3d 875 (4th Cir.), *cert. denied*, 519 U.S. 980 (1996).................... 4-5

BCS Ins. Co. v. Wellmark Inc.,
410 F.3d 349 (7th Cir. 2005) ........................................................... 9

*Block 175 Corp. v. Fairmont Hotel Mgmt. Co.*,
648 F. Supp. 450 (D. Colo. 1986).................................................... 6

Bombardier Corp. v. National R.R. Passenger Corp.,
298 F. Supp. 2d 1 (D.D.C. 2002)................................................... 6, 7

*BWX Elecs., Inc. v. Control Data Corp.*,
929 F.2d 707 (D.C. Cir. 1991).......................................................... 11

*Carter v. Cathedral Ave. Coop., Inc.*,
566 A.2d 716 (D.C. 1989) ................................................................ 14

*Cole v. Burns Int'l Sec. Servs.*,
105 F.3d 1465 (D.C. Cir. 1997)......................................................... 12

*Hart Enter. Int'l, Inc. v. Anhui Provincial Import & Export Corp.*,
888 F. Supp. 587 (S.D.N.Y. 1995) ................................................... 19

*Haynes v. Kuder*,
591 A.2d 1286 (D.C. 1991) .............................................................. 14

*Held v. Nat'l R.R. Passenger Corp.*,
101 F.R.D. 420 (D.D.C. 1984) ......................................................... 5

*Hercules & Co., Ltd. v.  Beltway Carpet Serv., Inc.*,
592 A.2d 1069 (D.C. 1991) .............................................................. 13

Howsam v. Dean Witter Reynolds
Inc., 537 U.S. 79 (2002) .................................................................. 12

*I.T.A.D. Assocs., Inc. v. Podar Bros.*,
636 F.2d 75 (4th Cir. 1981) .............................................................. 17

Indep. Oil Workers v. Mobil Oil Corp.
441 F.2d 651 (3d Cir. 1971) ............................................................. 9

*Intergen N.V. v. Grina*,
344 F.3d 134 (1st Cir. 2003)............................................................. 19

Jain v. de Mere,
51 F.3d 686 (7th Cir. 1995) .............................................................. 16

TABLE OF AUTHORITIES

*Local 771, I.A.T.S.E. v. RKO Gen., Inc.,
   546 F.2d 1107 (2d Cir. 1977) ............................................................. 5

*Marchetto v. DeKalb Genetics Corp.,
   711 F. Supp. 936 (N.D. Ill. 1989) ................................................. 8, 15

*McCrea M.D. v. Drs. Copeland, Hyman & Shackman, P.A.,
   945 F. Supp. 879 (D. Md. 1996) ........................................................ 5

*McCreary Tire & Rubber Co. v. CEAT S.p.A.,
   501 F.2d 1032 (2d Cir. 1974) ........................................................... 19

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc,
   473 U.S. 614 (1985)............................................................................ 19

Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,
   460 U.S. 1 (1983)............................................................................... 13

Nemitz v. Norfolk and W. Ry. Co.,
   436 F.2d 841 (6th Cir. 1971) ............................................................ 4

Nur v. K.F.C., USA, Inc.,
   142 F. Supp. 2d 48 (D.D.C. 2001) ................................................... 14

Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
   388 U.S. 395 (1967)........................................................................... 14

Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.,
   49 F. Supp. 2d 331 (S.D.N.Y. 1999) ................................................ 9

*Scherk v. Alberto-Culver Co.,
   417 U.S. 506 (1974)........................................................................... 18

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.,
   767 F.2d 1140 (5th Cir. 1985) ......................................................... 19

*S-Fer Int'l, Inc. v. Paladion Partners, Ltd.,
   906 F. Supp. 211 (S.D.N.Y. 1995) .................................................. 19

*Shaw Group Inc. v. Triplefine Int'l Corp.,
   322 F.3d 115 (2d Cir. 2003) .............................................................. 3

*Sphere Drake Ins. PLC v. Marine Towing, Inc.
   16 F.3d 666 (5th Cir. 1994) ............................................................. 18

Stone v. Doerge,
   328 F.3d 343 (7th Cir. 2003) ........................................................... 9

Summit Packaging Sys., Inc. v. Kenyon & Kenyon,
   273 F.3d 9 (1st Cir. 2001).................................................................. 9

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
   241 F.3d 135 (2d Cir. 2001) ............................................................. 17

*Washington Mailers Union No. 29 v. Washington Post,
   233 F.3d 587 (D.C. Cir. 2000).......................................................... 13

TABLE OF AUTHORITIES

*Woodland Ltd. P'ship v. Wulff,
    868 A.2d 860 (D.C. 2005) ..................................................................... 12, 13

**Statutes**

*9 U.S.C. § 3 ................................................................................................. 16

*9 U.S.C. § 4 ................................................................................................. 16

*9 U.S.C. § 206 ........................................................................................ 17, 18

*9 U.S.C. § 208 ............................................................................................. 17

*9 U.S.C.A. § 201 .......................................................................................... 18


**Treaties**

*Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10,
    1958 [1970] 21 U.S.T. 2715, T.I.A.S. No. 6997 ........................................ 18

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..................................................... 1, 4

**Other Authorities**

BLACK'S LAW DICTIONARY (8th ed. 2004)...................................................... 10

THOMAS H. OEHMKE, COMMERCIAL ARBITRATION (2005) ........................... 9, 17

ALBERT JAN VAN DEN BERG, THE NEW YORK CONVENTION OF 1958 (1981)................. 19

Defendant La Générale des Carrières et des Mines Exploitation ("Gecamines") moves to dismiss this Action because Gecamines and Plaintiff Intelsat Global Sales & Marketing Ltd. ("Plaintiff" or "Intelsat") agreed to arbitrate the types of claims at issue here if either party elects to invoke the dispute resolution clause in the agreement between them.  Plaintiff concedes that it drafted the arbitration clause as part of its standard terms and conditions; however, it now asks this Court to construe the contract in a way that would render the arbitration clause entirely meaningless.  The prevailing case law, however, indisputably establishes that Gecamines has the absolute right to invoke its rights under the arbitration agreement and compel Intelsat to arbitrate the claims now before this Court.  This Court does not have jurisdiction to decide the issue of arbitrability in any event because the parties agreed to abide by certain international arbitration rules that call for the parties to submit such issues to the arbitrator for resolution.  Under these circumstances, the law dictates that the arbitrator and not the Court must decide whether the parties agreed to arbitrate and whether the claims at issue fall within the scope of the arbitration agreement.  Plaintiff does not dispute that the arbitration rules found in its form contract dictate such a result.  Rather, it relies on distinguishable cases, with far different facts, to try to persuade the Court to entertain the arbitrability issue here.  Clearly, Intelsat seeks to have this Court enforce certain provisions in the parties' Agreement and completely ignore other provisions which Intelsat dislikes.

Accordingly, Gecamines asks the Court to dismiss this Action for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Alternatively, Gecamines

requests that the Court stay these proceedings and compel arbitration, as the Federal Arbitration Act requires in these circumstances.

## STATEMENT OF RELEVANT FACTS

The Terms and Conditions, incorporated by reference in the Novation Agreement and on which Intelsat bases its claims, explicitly allow either party to elect to arbitrate "all disputes, controversies, or claims arising under the Agreement, or in connection with services provided pursuant to this Agreement."  Attachment 2 to the Novation Agreement, Terms and Conditions at § 17 (attached as Ex. 1 to Gecamines' Opening Mem.).  Gecamines seeks to arbitrate these claims, pursuant to its specific express rights under the Agreement, and has moved this Court for such an order.  Intelsat asks this Court to ignore these terms and deny Gecamines its right to arbitrate under the guise of applying a general forum-selection clause found in the Novation Agreement.  The parties' Agreement, when read as an integrated whole – as it should be, makes clear that the general forum-selection clause applies in only limited circumstances which do not exist here, and thus cannot be invoked to prevent Gecamines to exercise its rights under the dispute-resolution clause.

## ARGUMENT

### I.      The Question of Arbitrability Is One for the Arbitrator, and Not the Court.

The parties agreed to adhere to the Rules of Arbitration of the International Chamber of Commerce ("ICC Rules"), which provide that the arbitrator must decided the threshold issue of arbitrability.  *See* Gecamines' Opening Mem. at 4-6 and cases cited therein; *see also* Attachment 2 to Novation Agreement at § 17 (hereinafter "Terms &

Conditions") (incorporating by reference ICC Rules); ICC Rules Art. 6.2 (disputes over arbitrability decided by arbitrator).  Under such circumstances, courts have held that a court lacks jurisdiction to entertain this threshold issue.  *See, e.g., Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122 (2d Cir. 2003); *see also AT&T Techs. Inc. v. Comms. Workers*, 475 U.S. 643, 649 (1986) (if parties agree to follow specific arbitration rules that call for the arbitrator to decide arbitrability, court should not decide the issue). Plaintiff does not dispute that the ICC Rules dictate that the arbitrator must decide issues bearing upon arbitrability.  Rather, Plaintiff attempts to gloss over this crucial issue by citing cases supporting the general proposition that courts, not arbitrators, should decide whether an arbitration clause requires parties to arbitrate.  Opp. Mem. at 6.  This general rule, however, does not apply to cases, such as this one, in which the parties have explicitly incorporated by reference into their agreement arbitration rules calling for the arbitrator to decide arbitrability issues.  Opening Mem. at 4-6.  Because the parties here have agreed to proceed under the ICC Rules, which give the arbitrator the authority to decide the threshold issue of arbitrability, the Court has no jurisdiction to decide this matter and, on this basis alone, should dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II.    The Court Must Compel Arbitration Under the Dispute Resolution Mechanism in the Contract at Issue.

### A.    Because the Arbitration Agreement Requires The Parties to Arbitrate the Present Claims, Plaintiff Cannot Maintain This Action in Federal District Court.

In any event, the arbitration provision to which the parties in this Action agreed requires them to submit to arbitration if ***either party*** elects that option.  Indeed, the

arbitration provision reads: "**either party** may submit the dispute, controversy or claim for settlement by arbitration . . . . and the [arbitrator's] decision shall be binding on the Customer and the Company." Terms & Conditions at § 17 (emphasis added). Plaintiff has attempted to frustrate the purpose of the parties' Agreement by bringing this Action before this Court and refusing to arbitrate the claims. Plaintiff has not provided any authority to support its primary position that, under the circumstances at issue here, a party may unilaterally determine whether arbitration is permissive and thereby effectively prevent the other party from exercising its right to arbitrate. *See* Opp. Mem. at 7-12.

### 1. Courts Have Construed Similar Arbitration Provisions As Mandatory and Not Permissive.

Courts examining contract language virtually identical to the relevant contract provision here have held arbitration clauses to be mandatory when a party to the agreement requests arbitration. Because either party has the absolute right to arbitrate claims arising from the agreement, the permissive nature of the clause becomes mandatory when either party is aggrieved by the other's failure to arbitrate. This scenario is exactly what those Circuits that have confronted this issue have decided when examining arbitration clauses that give either party the right to arbitration. *See, e.g., Atkins v. Louisville & Nashville R.R.*, 819 F.2d 644, 646-49 (6th Cir. 1987) (arbitration was mandatory, despite language stating that disputes "may be referred by either party to an arbitration committee."); *Local 771, I.A.T.S.E. v. RKO Gen., Inc.,* 546 F.2d 1107, 1116 (2d Cir. 1977); *Nemitz v. Norfolk and W. Ry. Co.,* 436 F.2d 841, 849 (6th Cir. 1971) ("the election by one of the parties to arbitrate makes the clause compulsory"); *see also Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 879 (4th Cir.) (interpreting the language of the arbitration provision as permissive would render it "meaningless for all

practical purposes"), *cert. denied*, 519 U.S. 980 (1996); *Am. Italian Pasta Co. v. Austin Co.*, 914 F.3d 1103, 1104 (8th Cir. 1990) ("There would be no reason for the arbitration [provision, which stated that a 'dispute or disagreement may be submitted to arbitration] if the parties intended it to be permissive, for the parties could voluntarily have agreed to submit a dispute to arbitration in the absence of such a provision").

Several district courts have also applied the same reasoning in rejecting arguments that permissive language in an arbitration clause prevents a court from compelling arbitration in a case such as this. In particular, this Court's decision in *Held v. Nat'l R.R. Passenger Corp.*, 101 F.R.D. 420 (D.D.C. 1984), bears striking similarities to the present case. In that case, Plaintiff sued in federal court for breach of an employment contract, and Amtrak moved to compel arbitration pursuant to the agreement between the parties. The relevant dispute resolution provision provided that "either party may refer the dispute to the Secretary of Labor for determination." *Id.* at 423. Plaintiff in that case argued, similar to Intelsat here, "that the use of the word 'may' . . . means that arbitration before the Secretary is permissive rather than mandatory." *Id.* The court rejected plaintiff's argument, and dismissed plaintiff's claim. Judge Green found that because either party had the right to arbitration, the defendant Amtrak was aggrieved by plaintiff's failure to arbitrate. "In short, the use of the word 'may' in an arbitration agreement does not imply that the parties to the agreement have the option of invoking some remedy other than arbitration." *Id.* at 824. Other district courts have so similarly held. *See, e.g., McCrea M.D. v. Drs. Copeland, Hyman & Shackman*, *P.A.*, 945 F. Supp. 879, 881-82 (D. Md. 1996) (court rejected argument that language in the arbitration provision was permissive when it provided "either party may petition" court for an order

compelling arbitration); *Block 175 Corp. v. Fairmont Hotel Mgmt. Co.*, 648 F. Supp. 450, 452 (D. Colo. 1986) (plaintiff's contention that arbitration in such a case was permissive belied common sense).

Because the Agreement at issue gives Gecamines the explicit right to arbitrate this dispute and Gecamines has invoked its right to do so, this Court, if it reaches the issue of arbitrability, should compel arbitration.

2.    <u>The Cases Upon Which Plaintiff Relies To Support Its Argument Regarding The Permissive Nature of Arbitration Are Inapposite.</u>

Although Plaintiff cites several cases to support its position that it has the right to decide unilaterally whether the present dispute will be litigated in this Court or arbitrated pursuant to the parties' Agreement, none of the cases actually provides such support. Plaintiff in particular seems to place significant weight on this Court's ruling in *Bombardier Corp. v. National R.R. Passenger Corp.*, 298 F. Supp. 2d 1 (D.D.C. 2002); however, its reliance on *Bombardier* is entirely misplaced.

In *Bombardier*, the Court never faced the issue now before it in this Action, namely whether the parties agreed to arbitrate their dispute. Rather, the Court had to decide whether the parties had agreed to participate in certain dispute-resolution processes, which were more akin to mediation than arbitration,[1] as an absolute condition precedent to filing suit in federal district court. *Id.* at 4. The Court merely ruled that adhering to the ADR mechanisms did not represent a condition precedent to initiating

---

[1] The ADR procedures in *Bombardier* bore limited resemblance even to mediation. Under those ADR procedures, the claimant was required to submit its claims to the contracting officer and other personnel employed by the other party to the contract. After doing so, the claimant could submit its claim to a "Dispute Resolution Board," which under the circumstances had no power to bind the parties. *Id.* at 5-6. This case does not implicate either the Federal Arbitration Act or the strong public policy favoring arbitration. *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 333 F.2d 250, 254 (D.C. Cir. 2003).

6

litigation because, under general contract construction rules, parties must clearly and unequivocally identify a contract provision as a condition precedent for that provision to be treated as such. *Id.* at 5. Here, no dispute whatsoever exists about whether any term or condition in the parties' Agreement may be construed as a condition precedent to any other right or obligation found in the Agreement. In this regard, *Bombardier* bears absolutely no relevance to the issues before the Court. Although the Court in *Bombardier* made two observations as supplemental grounds for the Court's primary holding, neither observation justifies the strained construction of the arbitration agreement between Gecamines and Plaintiff now advanced by Plaintiff.

First, the Court noted that the ADR clause in *Bombardier* gave the plaintiff the option to participate or not in the dispute-resolution procedures specified in the contract and, thus, the ADR mechanisms could not be deemed a condition precedent to filing suit in federal court. *Id.* at 4-5. Unlike here, however, the ADR provision in *Bombardier* did not confer upon each party the right to invoke the ADR procedures. Rather, the contract left the decision about whether to pursue alternative dispute resolution solely within the discretion of the plaintiff in that particular case. *Id.* at 5. Indeed, once the plaintiff--a general contractor to a construction contract--had submitted its claim to various contracting officers to try to resolve the dispute, "the Contract [provided] that if the Contractor . . . disagree[d] with the [contracting officers'] decision[s], the Contractor '*may* pursue the Claim in accordance with . . .' the dispute resolution procedures." *Id.* at 5. This description clearly shows that the Court had ample bases for finding that the ADR clause in *Bombardier* merely permitted, but did not require, the plaintiff to proceed through the non-binding dispute resolution process before filing suit. This finding in no

way undermines the right and ability of a party, like Gecamines, against whom a claim
has been asserted, to compel arbitration if the arbitration clause gives it the express right
to opt to arbitrate such a claim.

Second, in *Bombardier*, this Court found that "the interests of efficiency and
expediency will not likely be served by dismissing Bombardier's claims and directing it
to complete the dispute resolution procedures before returning to court," as the claim at
issue fell outside the scope of the dispute resolution board's ("DRB") binding authority.
*Id.* at 6.  The DBR could only issue binding decisions on claims amounting to $5 million
or less; however, the plaintiff asserted a claim for $200 million.  *Id.*   Under those
circumstances, dismissing the action and requiring the parties to participate in the dispute
resolution process would have not likely resolved the dispute, only wasted time and
money, and thereby conflicted with the purpose of alternative dispute resolution.  *Id.*  No
such inefficiencies would result here because the arbitral panel would have authority
under ICC Rules and the parties' Agreement to issue a decision binding upon both
parties.[2]  ICC Rules Art. 28-6 ("Every award shall be binding on the parties"); Terms &
Conditions at § 17 ("the decision shall be binding on the Customer and the Company").

The other cases upon which Plaintiff relies in its attempt to show that the
arbitration agreement at issue here is permissive similarly miss the point.  They merely
stand for the unremarkable proposition that, if a contract gives the parties the explicit
choice between submitting a claim to arbitration or litigating the claim in court, the

---

[2]  To the extent that enforcing the arbitration agreement here could arguably give rise to some inefficiencies
in resolving the present dispute, that does not provide a sufficient basis for denying Gecamines its right
under the parties' Agreement to elect to arbitrate.  *See Marchetto v. DeKalb Genetics Corp.,* 711 F. Supp.
936, 939 (N.D. Ill. 1989); THOMAS H. OEHMKE, COMMERCIAL ARBITRATION § 41:4 (2005) ("U.S. district
courts must compel an arbitration under a valid arbitration agreement pursuant to the New York
Convention despite the perceived consequences.").

8

parties can chose either option. *See* Opp. Mem. at 9-12 (citing cases). These cases simply do not support Plaintiff's contention that "[i]t is well established that optional arbitration clause [sic] are just that – optional." Opp. Mem. at 9. None of the cases construes an arbitration provision similar to the one between Gecamines and Plaintiff. *See* Opp. Mem. at 9-12.

For example, the arbitration provision at issue in *Indep. Oil Workers v. Mobil Oil Corp.* 441 F.2d 651, 653 (3d Cir. 1971) -- one of the cases upon which Plaintiff relies, explicitly gave the parties the ability to seek relief either in a court of competent jurisdiction or before an arbitral panel. *Id.* at 653; *see also Summit Packaging Sys., Inc. v. Kenyon & Kenyon*, 273 F.3d 9, 12 (1st Cir. 2001) (contract explicitly giving parties choice between either arbitration or New York state courts); *Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 339 (S.D.N.Y. 1999) (contract provided for litigation or arbitration, and plaintiff could not commence both and switch between the two).[3]  The arbitration agreement between Gecamines and Plaintiff does not give a party an express or an implied right to initiate and maintain an action in this Court if the other party elects arbitration. *See* Terms & Conditions at § 17.

### B.    The Parties Only Agreed to Submit to The Jurisdiction of This Court For Very Limited Purposes, None of Which Applies Here.

The parties agreed to litigate in this forum only in very limited circumstances: one in which a party seeks interim relief, such as a preliminary injunction, or the other in which a party seeks confirmation or enforcement of an arbitration award. Indeed, in

---

[3] The two remaining cases that Plaintiff cites are similarly inapplicable and unhelpful. The arbitration provision in *BCS Ins. Co. v. Wellmark Inc.*, 410 F.3d 349, 350 (7th Cir. 2005), mandated arbitration at the sole option of the Insured, who chose not to arbitrate. And, the arbitration provision in *Stone v. Doerge*, 328 F.3d 343, 346 (7th Cir. 2003) mandated arbitration if "Bear Stearns cleared the trades that gave rise to a securities dispute," which did not occur in the case.

addition to allowing either party to submit any dispute to arbitration, the dispute resolution provision also provides:

> Any party to this Agreement may seek from a court of the District of Columbia or a United States Federal Court sitting in the District of Columbia any interim relief, including injunctive relief, or confirmation of any arbitral award rendered in whole or in part. This Section shall not limit the rights of any party to obtain execution of judgment or to seek injunctive or specific performance in aid of such an award from a court of the District of Columbia or a United States Federal Court sitting in the District of Columbia.

Terms & Conditions at § 17. Intelsat certainly cannot claim that it now seeks to enforce an arbitrator's judgment or to obtain any type of interim relief from this Court. *See* Compl. ¶¶ 13-27. Intelsat suggests that its request for a permanent injunction somehow qualifies as "interim relief." *See* Opp. Mem. at 16. This suggestion is absurd. Interim relief can only logically be deemed temporary or preliminary relief available before an arbitrator issues a permanent order. *See* BLACK'S LAW DICTIONARY 1317 (8th ed. 2004) (interim relief is "relief that is granted on a preliminary basis before an order finally disposing of a request for relief"). Clearly, the relief sought by Intelsat cannot be characterized as "interim" in nature.

The parties also have arguably agreed to submit to jurisdiction in this Court for any claim that neither party elects to submit to arbitration. This follows from the fact that parties' Agreement contains a forum-selection provision that provides that the "[p]arties hereby submit to the exclusive jurisdiction of the District of Columbia courts or any United States Federal Court sitting in the District of Columbia." Novation Agreement (Ex. 1 to Compl.) at § 9. Contrary to Plaintiff's argument, however, this forum-selection clause cannot possibly be construed so broadly as to require the parties to forego their

rights under the arbitration clause and litigate any and all claims between them in the local or federal courts in the District of Columbia. Such a construction would make no sense and violate general rules applicable to contract construction.

Plaintiff argues that Gecamines cannot now seek to arbitrate this dispute because, for among other reasons, Gecamines "has irrevocably consented to the jurisdiction of this [C]ourt." Opp. Mem. at 5. If Plaintiff's interpretation of the Agreement were correct, the dispute-resolution clause would make no sense and the forum-selection provision would render the dispute resolution provision utterly meaningless. Neither party would then ever be able to seek to arbitrate a claim. Clearly, this is not what the parties agreed to.

The dispute resolution clause and the forum selection clause, as provisions within the same contract,[4] must be read together and reconciled so as to avoid any inconsistency between the two provisions. *BWX Elecs., Inc. v. Control Data Corp.,* 929 F.2d 707, 711 (D.C. Cir. 1991) ("[i]t is a fundamental tenet of contract interpretation that a contract provision should be interpreted, where possible, as consistent with the contract as a whole."). A plain reading of the two clauses in tandem demonstrates that Gecamines has not agreed to submit to the jurisdiction of this Court in connection with those claims that it elects to arbitrate. Accordingly, requiring Gecamines to litigate in this forum would be inconsistent with its agreement to submit to the jurisdiction of this Court for only limited purpose.

To the extent that any ambiguities arise due to any apparent inconsistencies between the forum selection and dispute resolution clauses, the Court should construe

---

[4] Plaintiff concedes that the Terms and Conditions found in Attachment 2 to the Novation Agreement are incorporated by reference in the Novation Agreement and, as such, are part of the parties' Agreement. Opp. Mem. at 5.

such ambiguities against Intelsat. The Novation Agreement, including the Terms and Conditions attached thereto, represent Intelsat's "standard" form contract language. *See* Opp. Mem. at 5.[5] As the Agreement's author, Intelsat bears responsibility for any ambiguities and, if the ambiguities make the Agreement difficult to interpret, they should be construed in favor of Gecamines. Indeed, "[a]mbiguous provisions are construed against the drafter of the contract." *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1486 (D.C. Cir. 1997).

Intelsat has no right under this Agreement to litigate this dispute in this jurisdiction. Intelsat argues it has the right to pursue all remedies available to it under the Agreement cumulatively. *See* Opp. Mem. at 6. That does not mean Intelsat can seek remedies – to the extent the process by which remedies are decided can be considered a remedy in and of itself – that are unavailable under the contract and actually conflict with the remedies set forth in the Agreement.

### C.    Gecamines Has Not Waived Its Rights to Arbitration.

Contrary to Plaintiff's argument, Gecamines has not "waived" its rights to arbitration. As a preliminary matter, it is for the arbitrator, and not the Court, to decide upon procedural arbitration issues, such as "waiver, delay, or a like defense to arbitrability." *Howsam v. Dean Witter Reynolds Inc.,* 537 U.S. 79, 84-85 (2002) (cited by Plaintiff, Opp. Mem. at 6); *Woodland Ltd. P'ship v. Wulff,* 868 A.2d 860, 864 (D.C. 2005) (referring question of waiver to arbitrator) (cited by Plaintiff, Opp. Mem. at 14). Therefore, this Court should decline to entertain the waiver argument.

---

[5]    Moreover, the face of the Novation Agreement clearly shows it to be an Intelsat form contract. For instance, all of the information regarding Plaintiff in the preamble to the agreement as well as in the attached Schedules is typed, whereas much of the information regarding Gecamines is handwritten into the agreement. *See* Compl., Ex. 1 at 1 and Schedule attached thereto.

Nevertheless, Gecamines clearly has not waived its rights to arbitration in this case and any suggestion that it has defies logic. "[T]he test for determining whether there has been a waiver of the right to arbitration is whether, under the totality of circumstances, the defaulting party has acted inconsistently with the arbitration right." *Woodland Ltd. P'ship,* 868 A.2d at 863. "Active participation or other action inconsistent with the right to arbitration is required before a finding of waiver can be made." *Id.* at 863-64 citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). Any ambiguity as to the scope of the waiver must be resolved against waiver and in favor of arbitration. *Id.* Plaintiff alleges that Gecamines has waived its right to arbitration by failing to communicate its disagreement with the invoices it received from Plaintiff. Opp. Mem. at 14. Plaintiff does not explain however how such conduct, even if true, is *inconsistent with Gecamines' right to arbitration.* At best, such an allegation might have some bearing on the merits of the dispute, which the Court cannot consider on this Motion to Dismiss. *Washington Mailers Union No. 29 v. Washington Post,* 233 F.3d 587, 590 (D.C. Cir. 2000) (court cannot consider arguments addressing merits in motion to dismiss based on arbitration agreement) citing *AT&T Techs. Inc.,* 475 U.S. at 649. Whether or not Gecamines disputed any particular invoice simply has no relevance to whether Gecamines somehow might have waived its right to arbitrate this dispute. The fact remains that Gecamines simply has not acted inconsistently with its right to arbitration, but rather, has raised its right to arbitrate at its first opportunity to respond to Plaintiff's Complaint. *Hercules & Co., Ltd. v. Beltway Carpet Serv., Inc.,* 592 A.2d 1069, 1074 (D.C. 1991) (defendant has not acted

13

inconsistently with right to arbitrate, but rather asserted its right to arbitrate in its first pleading).

>    **D.    Plaintiff's Claims Fall Squarely Within the Scope of the Arbitration Provision.**

All of Plaintiff's claims fall within the scope of the parties' arbitration agreement, particularly given that such scope should be construed liberally. *Nur v. K.F.C., USA, Inc.*, 142 F. Supp. 2d 48, 50-51 (D.D.C. 2001); *Haynes v. Kuder*, 591 A.2d 1286, 1289 (D.C. 1991) (the court must inquire "merely whether the arbitration clause is susceptible of an interpretation that covers the dispute"). Plaintiff asserts three claims in its Complaint: (1) a claim for breach of contract; (2) a claim for quantum meruit/unjust enrichment; and (3) a claim for permanent injunctive relief based on Gecamines' alleged unauthorized use of Plaintiff's services. Plaintiff does not dispute that the arbitration provision clearly encompasses its breach of contract claim. Rather, Plaintiff argues that the second and third claims fall outside the reach of the arbitration provision because they are not based on the Agreement at issue. *See* Opp. Mem. at 16 ("no contractual rights are in dispute" as to these causes of action).

The arbitration provision applies to "all disputes, controversies or claims arising under the Agreement or in connection with services provided pursuant to this Agreement." Terms and Conditions at § 17. Courts have held that such arbitration provisions should be broadly construed, and any ambiguity must be resolved in favor of arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398 (1967) ("arising out of or relating to" is a "broad arbitration clause."); *Carter v. Cathedral Ave. Coop., Inc.*, 566 A.2d 716, 718-19 (D.C. 1989). The Supreme Court has stated:

> [w]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*AT&T Techs. Inc.,* 475 U.S. at 650. Intelsat's second and third claims clearly deal with Gecamines' use of the services identified in the Agreement. Moreover, in assessing these claims, the trier of fact would be required to look to the Agreement at issue to determine whether Gecamines abided by the use and termination clauses, and Plaintiff by the termination or suspension of services clauses, contained therein. *See, e.g.,* Terms & Conditions at §§ 6-8, 12. Therefore, because the arbitration clause broadly applies to not only contract disputes but to any dispute regarding the services at issue in the Agreement,[6] and all asserted claims clearly relate to such telecommunications services, it cannot be said that the scope of the arbitration agreement "is not susceptible of an interpretation" that covers these claims.[7]

### E. The FAA and Convention Both Require the Court to Compel Arbitration under the Present Facts.

The Federal Arbitration Act ("FAA") applies to Gecamines alternative request to compel arbitration, notwithstanding Plaintiff's arguments to the contrary. And under the FAA, specifically Sections 3 and 4, 9 U.S.C. §§ 3 and 4, if the Court entertains the issue of arbitrability, the Court would have no discretion here but to stay these proceedings and

---

[6] Moreover, the scope of the arbitration clause is itself a proper question for arbitration. *See Marchetto,* 711 F. Supp. at 939-40.

[7] In the event that Plaintiff's second and third causes of action somehow may be deemed to fall outside the scope of the Agreement, so too would they be beyond the scope of the forum-selection clause contained therein, on which Plaintiff bases this Court's jurisdiction. If such is the case, this Court must dismiss Plaintiff's second and third cause of action for lack of jurisdiction, and compel arbitration for Plaintiff's breach of contract claim.

compel arbitration.  *See* Opening Mem. at 6-9.  To the extent the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") may also apply, the Convention dictates the same result.  Plaintiff's superficial interpretation of the Convention, without any supporting case law or other authority, cannot demonstrate a conflict between the FAA and the Convention, when none in fact exists as to whether the Court has any discretion in compelling arbitration.[8]  Whether one applies the FAA or the Convention to Gecamines' present Motion, the exact same result will be reached – the Court must compel arbitration, assuming the Court even reaches the issue of arbitrability.

The FAA clearly applies in this case.  The parties agreed that the contract at issue would be construed according to the laws of the District of Columbia.  Because the arbitration panel would be governed by and apply District of Columbia law in the arbitration proceedings, this case qualifies for treatment under Chapter 1 of the FAA, including Sections 3 and 4, 9 U.S.C. §§ 3 and 4, which Gecamines invokes as a basis for requesting this Court to compel arbitration.  Indeed, "[a]n international case can also qualify as a 'domestic' case (thus, invoking FAA Chapter 1) if the arbitration proceeding either is governed by U.S. law or if the award is made in the United States."  OEHMKE at § 41:4.

Moreover, FAA Chapter 1 applies here because the relevant provisions within that Chapter, in particular Sections 3 and 4, do not conflict with the Convention.  *See, e.g.,* 9 U.S.C. § 208 ("Chapter 1 [of the FAA] applies to actions and proceedings brought under this chapter [2] to the extent that that chapter [1] is not in conflict with this chapter or the

---

[8] Plaintiff's citation to *Jain v. de Mere,* 51 F.3d 686 (7th Cir. 1995) is misplaced.  At issue there was whether the court could compel arbitration when the parties' arbitration agreement did not provide an arbitral location.  The Seventh Circuit concluded that arbitration could be compelled to take place in Illinois.  Here, on the other hand, the arbitration provision explicitly mandates that arbitration take place in Paris, France according to the ICC Rules.

Convention as ratified by the United States").  Plaintiff tries to avoid application of FAA Chapter 1 by concocting an alleged conflict between Chapters 1 and 2 under circumstances in which one simply does not exist.  It is clear that once this Court finds that the parties entered into an enforceable arbitration agreement, it must refer the case to arbitration under not only Section 206 of the FAA – which falls within Chapter 2 of the Act and represents the United States' codification of its obligations under the Convention but also the Convention itself – which Plaintiff asserts governs this dispute.

Although Section 206 of the FAA provides that a court "may direct that arbitration be held," courts have consistently construed this language as mandatory, not permissive, requiring them to compel arbitration.  *See, e.g., U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146 (2d Cir. 2001) (under Chapter 2 of the FAA, "[u]pon finding that such an [arbitration] agreement exists, a federal court must compel arbitration of any dispute falling within the scope of the agreement pursuant to the terms of the agreement."); *I.T.A.D. Assocs., Inc. v. Podar Bros.,* 636 F.2d 75, 77 (4th Cir. 1981) ("we find that 9 U.S.C. § 206 does not, as the district court believed, confer discretion in compelling arbitration.").  Thus, Plaintiff's reliance on the word "may" in Section 206 to demonstrate an alleged conflict between Chapters 1 and 2 of the FAA proves nothing once one considers how courts apply this statutory provision to requests to compel arbitration.

That courts have construed the language in Section 206 as mandatory, leaving them with no discretion to decide not to compel arbitration, should come as no surprise given the explicit terms of the Convention and the federal policy favoring arbitration in international disputes.   The Convention is an international agreement designed "to

encourage the recognition and enforcement of commercial arbitration agreements in

international contracts and to unify the standards by which agreements to arbitrate are

observed and arbitral awards are enforced." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506,

520 n.15 (1974). Article II of the Convention provides:

> The court of a Contracting State, when seized of an action in a
> matter in respect to which the parties have made an agreement
> within the meaning of this article, ***shall, at the request of one of the
> parties***, refer the parties to arbitration, unless it finds that the said
> agreement is null and void, inoperative or incapable of being
> performed.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10,

1958, [1970] 21 U.S.T. 2715, T.I.A.S. No. 6997, *reprinted* at 9 U.S.C.A. § 201 (emphasis

added). Plaintiff is therefore wrong in asserting that "under the Convention, there is no

statute requiring arbitration to be held, even if an arbitration agreement is in force." Opp.

Mem. at 13. *See, e.g., Intergen N.V. v. Grina,* 344 F.3d 134, 141 (1st Cir. 2003)

("enforcing arbitration clauses under the . . . Convention is an obligation, not a matter

committed to district court discretion"); *Sphere Drake Ins. PLC v. Marine Towing, Inc.*

16 F.3d 666, 670 (5th Cir. 1994) ("the court is under an unflagging nondiscretionary duty

to grant a timely motion to compel arbitration and thereby enforce the . . . Convention, as

provided in Chapter 2 of the FAA, even though the agreement in question requires

arbitration in a distant forum."); *McCreary Tire & Rubber Co. v. CEAT S.p.A.,* 501 F.2d

1032, 1037 (2d Cir. 1974) (finding "it was error to deny the motion for a stay in disregard

of the convention"); ALBERT JAN VAN DEN BERG, THE NEW YORK CONVENTION OF 1958

135 (1981) ("There is a general agreement amongst the courts that this language does not

leave any discretion to a court for referring to arbitration once the conditions for referral

are fulfilled.").

Courts have regularly applied the FAA and the Convention jointly to compel arbitration in international disputes. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc,* 473 U.S. 614, 631 (1985) (compelling arbitration under both the FAA and the Convention); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.,* 767 F.2d 1140, 1146 (5th Cir. 1985) ("Both the Arbitration Act and the Convention provide that if a dispute in a pending lawsuit is subject to arbitration, the district court 'shall on application of one of the parties stay the trial of the action until such arbitration has been had.'"); *Hart Enter. Int'l, Inc. v. Anhui Provincial Import & Export Corp.,* 888 F. Supp. 587, 590 (S.D.N.Y. 1995) ("Section 206 of the Federal Arbitration Act implements the Convention," which requires courts of Contracting States to "refer the parties to arbitration"). Because the FAA and Convention do not conflict with respect to the issue at hand, both provide sufficient grounds to compel arbitration here and, in fact, mandate that arbitration be compelled.

### III.    Gecamines Has Not Agreed to Submit to the Jurisdiction of This Court Under These Circumstances And Should Not Be Forced To Due So Given The Inconvenience and Hardships That Would Result.

Gecamines only agreed to submit to this Court's jurisdiction in a few limited circumstances--and this is not one of them. *See supra* 10-12. Accordingly, the forum selection clause cannot be invoked to force Gecamines to litigate this Action in this forum. *See S-Fer Int'l, Inc. v. Paladion Partners, Ltd.,* 906 F. Supp. 211, 214 (S.D.N.Y. 1995) (refusing to transfer case pursuant to the forum-selection clause because plaintiff's case did not fall within the scope of the clause). It stands to reason therefore that Gecamines has every right to assert the doctrine of *forum non conveniens* under these circumstances to avoid having to litigate in a forum having far fewer contacts with the

19

subject matter of this Action than several other forums.  *See id.*  This dispute should be arbitrated in Paris, France as the parties agreed.  *See* Terms & Conditions at § 17.  But in any event, Belgium, France, and the United Kingdom represent relatively more convenient forums for the parties and the witnesses than this forum.  *See* Opening Mem. at 9-11.

## CONCLUSION

For the foregoing reasons, Gecamines respectfully requests that the Court grant its Motion to Dismiss or, in the alternative, stay these proceedings and compel arbitration.

Date: September 29, 2005          Respectfully submitted,


_____/s/_____
Peter M. Boyle (D.C. Bar No. 441061)
Alexander M. Bullock (D.C. Bar No. 446168)
Svetlana S. Gans (D.C. Bar No. 478651)
KILPATRICK STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C.  20005
Telephone:     (202) 508-5800
Facsimile:     (202) 508-5858

*Attorneys for Defendant La Générale des Carrières et des Mines, formerly La Generale des Carrières et des Mines Exploitation, d/b/a Gecamines*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 29th day of September, 2005, pursuant to Federal Rule of Civil Procedure 5 and Local Civil Rules 5.3 and 5.4, a true and correct copy of Defendant Gecamines' Reply Memorandum in Support of Its Motion to Dismiss, or in the Alternative, to Stay Proceedings and Compel Arbitration was filed electronically and served on Plaintiff's counsel of record via the CM/ECF system.

                                                  _____/s/_____
                                                  Svetlana S. Gans